In re SIMMONS et al., Board of Water Supply (Hillview Reservoir, Section No. 1).

(Supreme Court, Appellate Division, Second Department. July 27, 1911.)

EMINENT DOMAIN (§ 230*)—COMMISSIONERS OF APPRAISAL—COMPENSATION.

As the commissioners of appraisal, engaged in estimating the value of land condemned by the board of water supply, had power to organize its business and insist upon punctual attendance by parties and prompt submission of the evidence under the penalty that follows default, they are not entitled to compensation upon the scale of full days, where they allowed the proceedings to drag along, and the sessions lasted only a few hours each day.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. § 584; Dec. Dig. § 230.*]

Appeal from Special Term, Westchester County.

In the matter of the application and petition of J. Edward Simmons and others, as the Board of Water Supply of the City of New York, to acquire real estate, etc. The petitioners appeal from an order taxing the bills of the commissioners of appraisal for services. Modified and affirmed.

Argued before JENKS, P. J., and THOMAS, CARR, WOODWARD, and RICH, JJ.

William McM. Speer, for appellant.
Henry R. Barrett, for respondents.

THOMAS, J. Commissioners of appraisal held sessions on 81 days for which they claim compensation, extending from June 11, 1909, to January 3, 1911, devoted largely to one parcel of land, a farm of 54 acres, adapted to sale in lots. At 75 sessions evidence was taken aggregating some 3,070 pages, some printed and some typewritten, or about 41 pages per session. In addition, one day, from 11 a. m. to 2 p. m., and another from 10:30 to 2 p. m., were devoted to viewing the property; one day, 10 to 2, and three other days, 11 a. m. to 3 p. m., to executive sessions. On three or four days when evidence was taken there was also an executive session, and another day was in part devoted to the preparation of the award and report. There were some

34 adjournments by consent, 6 at the instance of the corporation counsel, 2 to permit consideration or decision of questions by the commissioners, 2 to await action of engineer, 2 by reason of absence of a commissioner, 3 by reason of commissioners' illness, 12 upon request of claimant's counsel, 3 or more for absence of counsel, 3 on account of cold room, 3 by reason of witness' illness or inability to testify, 3 or more because there was no work. The corporation counsel offered some objection to or disapproval of 4 adjournments; on 2 occasions the commissioners asked for afternoon sessions.

The affidavit of the commissioner in every instance shows at what hour the commission met, but so often omits the hour of adjournment that the length of many of the sessions does not appear. But the average length indicated by the hours given in the history of 36 sessions is roundly 2 hours and 45 minutes, or less than one-half of a usual court day. I am not inclined to place the fault entirely upon the commissioners. They observed the system that has obtained in such proceedings. They were largely dependent upon the material furnished by the corporation counsel and the claimants, and those representing the interests of the city permitted the proceeding to drag through the days and years. What testimony they saw fit to provide for a session the commission took and then adjourned. On some days there was none, on some days a little, and on some a fair amount. While the average was about 40 pages, on March 22d, in some 4½ hours, they took 114 pages of evidence; on April 11, in 4 hours, they received 97 pages; while on April 13, in 4 hours and 20 minutes, the record shows 145 pages. If there was anything to do, they did it. If not, they adjourned. It is just to notice that, regardful of public criticism of commissions in general, they did, as early as December 3, 1909, express readiness to proceed daily and their "desire to sit every day until the whole thing is completed, and, if that can be done, I will be very much obliged to the corporation counsel, the representative of the city, and also the office of Mr. Flannery"; and again on December 7th, the commissioners asked the counsel to "be ready four days a week and proceed as rapidly as possible." But the loitering continued, and on January 4th the commissioners expressed their disapproval of the short sessions. And still the proceeding went forward with much of its former somnolence.

The representative of the city, when not consenting to or asking or abetting adjournments, joined in the general indolent conduct of the proceedings, seldom objecting to abbreviated or unemployed sessions, or opposing so mildly that the motion of the city to remove the commissioners as late as April, 1910, suggests a suitor disappointed by the rulings quite as much as the tardiness of the commission. This attempt to eliminate officers, properly nonconformable to the city's apprehension of the law and participants in its desultory and dilatory disposition of the matters in hand, delayed the sessions to October 27, 1910. The necessity and result of the disciplinary action of the city may be noted. In 13 sessions 437 pages of evidence were taken, or an average of 34 pages per session, and the commissioners sat 18 hours and 10 minutes, or an average time of 1 hour and 24 minutes for each

session. This excludes some parts of these days given to executive meetings. After the sessions were renewed on October 27th, the corporation counsel consented to or requested at least 10 adjournments and objected to none. The opposition of the city to the payment of the sum granted may be dutiful, but an exhibition of readiness and rigorous prosecution of the proceeding might have made its present attitude unnecessary. But the commissioners had the power to organize their business and insist upon punctual attendance by the parties, prompt submission of the evidence under the penalty that follows default, and when they ask for compensation their complaisance or submission cannot be substituted for the action that the law demands.

For the 75 days, while they were engaged for an average time of less than 3 hours, they should be paid for a half day's work at the rate of $50 per day, or $1,875; for the 6 days devoted to views and executive session they should be paid $300; and for days when they took evidence and also held executive sessions, and for those necessary adjournments on account of sickness or other cause excusably preventing a full day's service, $300 more may be added, making the allowance for each commissioner for services $2,475, and the order, as so modified, should be affirmed, without costs. All concur.